

UNSEALED AS OF 2/19/08

FILED

2008 FEB 12 AM 10: 23

CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

'08 MJ 0398

| | |
|---|---|
| UNITED STATES OF AMERICA, | Magistrate Case No. _____ |
| Plaintiff, | |
| v. | Title 18, U.S.C., Sec. 371; Conspiracy to Manufacture and Possess False Entry Documents |
| FAUSTO CHAVEZ-RUEDA and AMELIA VALENTE-HERNANDEZ, | |
| Defendant. | |

The undersigned complainant, being duly sworn, states:

Beginning on a date unknown but no later than November 2, 2006 and continuing up to and including January 30, 2008, within the Southern District of California, FAUSTO CHAVEZ-RUEDA ("CHAVEZ") and AMELIA VALENTE-HERNANDEZ ("VALENTE"), did knowingly and willfully combine, conspire, and agree together and with each other and with other persons unknown to the grand jury to knowingly commit offenses against the United States, namely to:

(a) Knowingly forge, counterfeit, alter and falsely make immigrant documents prescribed by regulation for entry into and as evidence of authorized stay and employment in the United States; in violation of Title 18, United States Code, Sections 371 and 1546(a);

(b) Utter, use, attempt to use, possess, obtain, accept and receive immigrant documents prescribed by statute or regulation for entry into and as evidence of authorized stay and employment in the United States knowing said documents to be forged, counterfeited, altered and falsely made and unlawfully obtained; in violation of Title 18, United States Code, Sections 371 and 1546(a).

## OVERT ACTS

In furtherance of said conspiracy, and to effect the objects thereof, the following overt acts, among others, were committed within the Southern District of California, and elsewhere:

1.  On or about November 29, 2007, VALENTE met with a confidential informant (hereinafter "CI") at VALENTE's residence located at 1125 Golden Road, Encinitas, California.  During this meeting VALENTE took five photographs from the CI.  A fictitious name and date of birth was written on the back of each photograph.

2.  On or about November 29, 2007, CHAVEZ met with VALENTE at her residence and VALENTE gave CHAVEZ the photographs.

3.  On or about November 29, 2007, CHAVEZ manufactured five counterfeit Resident Alien Cards and five counterfeit Social Security Cards using the photographs and information he had received from VALENTE.

4.  On or about November 29, 2007, CHAVEZ met with VALENTE at her residence and gave her the finished counterfeit documents.

5.  On or about November 29, 2007, the CI returned to VALENTE's residence at which time VALENTE took $500 from the CI and delivered five fraudulent Resident Alien Cards and five fraudulent Social Security cards to the CI.

And the complainant states that this complaint is based on the attached affidavit, which is incorporated herein by reference.

_____
KERRI CASTILLO, SPECIAL AGENT
IMMIGRATION AND CUSTOMS ENFORCEMENT

SWORN TO BEFORE ME AND SUBSCRIBED IN MY PRESENCE, THIS _____ DAY OF FEBRUARY, 2008

_____
UNITED STATES MAGISTRATE JUDGE

2

1  UNITED STATES OF AMERICA
                    v.
2  FAUSTO CHAVEZ-RUEDA and
   AMELIA VALENTE-HERNANDEZ
3

4                    STATEMENT OF PROBABLE CAUSE

5       I, Special Agent Kerri Castillo, declare under penalty of perjury
   that the following statement of probable cause is true to the best of
6  my knowledge.

7       On November 10, 2005, ICE agents arrested Fausto CHAVEZ-Rueda for
   violations of California Penal Code Section 113 - Manufacture,
8  Distribution or Sale of False Citizenship or Resident Alien Documents.
   Post-Miranda, CHAVEZ stated he did not make fake documents, however
9  he admitted to selling fraudulent immigration documents and Social
   Security cards.   Additionally, Agents served a search warrant at
10 CHAVEZ'S residence and conducted a "consent" search at his neighbor's
   residence, which were connected by a trap door.  Agents seized various
11 items necessary to generate counterfeit documents as well as
   fraudulent Permanent Resident Cards; Department of Motor Vehicles
12 (DMV) Identification cards; Social Security cards printed on card
   stock; hundreds of blank laminated card stock bearing the seals of the
13 INS and DMV as well as laminates bearing the seals of the INS and DMV.

14      On January 10, 2006, CHAVEZ was sentenced to 179 days custody and
   three years probation for a violation of California Penal Code Section
15 483.5(d) - Deceptive ID Document in the Superior Court of California,
   County of San Diego.  On April 5, 2006, CHAVEZ was removed to Mexico.

16      On November 1, 2006, a Confidential Informant (CI) spoke with
   Amelia VALENTE-Hernandez and made arrangements to purchase two
17 immigration documents and Social Security cards from her the following
   day.   The CI said VALENTE reminded him/her she does not make the
18 documents and that she will talk to "the guy" about turning them
   around in the same day.
19
        On November 2, 2006, I provided the CI with two photos of
20 Hispanic males. Additionally, a fictitious name and date of birth was
   written on the back of each photo.   The CI then met with VALENTE at
21 her residence located at 1125 Golden Road, Encinitas, California, and
   gave her the photos for the documents and $200 dollars.   Agent
22 Salvador Ochoa, who was monitoring the transmitting device worn by the
   CI, stated VALENTE said "the guy" is going to pick up the photos from
23 her at her residence and the documents should be ready later that
   evening.   After departing VALENTE'S residence, the CI stated that
24 while he/she was at her residence, VALENTE called "the guy" from her
   cell phone and told him she had the photos.  (Verizon Wireless records
25 reflect VALENTE'S cell phone was in contact with a telephone number
   subscribed to by Lady Sanchez during the time the CI was at VALENTE'S
26 residence.  Per San Diego Regional Crime/Incident Report case number
   06-6147B, Lady Sanchez is CHAVEZ'S wife and CHAVEZ provided this same
27 number as his home telephone number.)   Later that evening, CHAVEZ
   parked a 1990 Nissan 300ZX bearing California license plate 4TDA434
28 (hereinafter the "Nissan 300ZX"), which is registered to him, near

VALENTE'S driveway. CHAVEZ then walked towards VALENTE'S residence and departed the area two minutes later. Agents were unsuccessful in their attempts to follow CHAVEZ. Later that evening, the CI returned to VALENTE'S residence and she told him/her the documents would not be ready for pick up until 1200 hours the following day.

On November 3, 2006, CHAVEZ arrived at VALENTE'S residence in the Nissan 300ZX and departed the area three minutes later. Shortly thereafter, the CI spoke with VALENTE who stated the documents were ready and she would leave them on the table for him/her to pick up because she was not going to be home. The CI later returned to VALENTE'S residence to pick up the documents, which he/she retrieved from a table outside the residence. The documents consisted of two fraudulent Permanent Resident Cards that contained the photographs, names and dates of birth previously provided to VALENTE by the CI and two fraudulent Social Security cards that also bore the names previously provided to VALENTE by the CI. Additionally, contained in the envelope with the fraudulent documents were the two photos the CI had previously given to VALENTE, however "Amelia" was now written on the back of each photo. I believe this indicates CHAVEZ was manufacturing documents for other vendors besides VALENTE at that time.

On November 15, 2006, I provided the CI with three photos of Hispanic males. Additionally, a fictitious name and date of birth was written on the back of each photo. The CI then met with VALENTE at her residence and gave her the photos for the documents and $340 dollars. After departing VALENTE'S residence, the CI stated that while he/she was at her house, she called "the guy" from her cell phone and she told her he was in the area. (Toll records reflect that VALENTE'S cell phone was in contact with the telephone number subscribed to by CHAVEZ'S wife during the time the CI was at VALENTE'S residence.) Additionally, the CI stated VALENTE said the documents would be ready by 1500 hours and she was going to drive down to San Diego, California, to pick them up from him. Later on, CHAVEZ arrived at VALENTE'S residence in a red 2005 Ford F-150 bearing California license plate 7W51120 (hereinafter the "red F-150"), which is registered to him, met with VALENTE and departed the area four minutes later. Agents followed CHAVEZ who, after making a few brief stops, parked the red F-150 in an alley behind an apartment complex located at 4334 49th Street, San Diego and exited the vehicle. Approximately forty minutes later, CHAVEZ returned to the red F-150 and departed the area. Agents followed CHAVEZ, but lost sight of him near the intersection of Fairmount Avenue and Home Avenue in San Diego. Later on, the CI called VALENTE who stated she was in San Diego and was waiting for "the guy" to give her the documents. At approximately 1508 hours, VALENTE returned to her residence. Shortly thereafter, the CI spoke with VALENTE who stated the documents were ready and were on a table outside her house. The CI returned to VALENTE'S residence to pick up the documents and retrieved them from the table outside her house. The CI stated after talking the documents off the table, he/she spoke with VALENTE who told him/her that she met "the guy" at a 7-11 on Home Avenue to get the documents. (There is a 7-11 located off Home Avenue at 1702 Gateway Drive, San Diego. This 7-11 is approximately .7 miles from the intersection of Fairmont Avenue and

Home Avenue where agents last reported seeing CHAVEZ.) The fraudulent Permanent Resident card and Social Security card the CI retrieved from the table outside VALENTE'S residence were not the documents he/she had ordered from VALENTE earlier that morning. The CI then called VALENTE and explained he/she had picked up the wrong documents and she told him/her she had his/her documents at her residence. The CI returned to VALENTE'S residence to retrieve the correct documents, which included three fraudulent Permanent Resident Cards which contained the photographs, names and dates of birth previously provided to VALENTE by the CI and three fraudulent Social Security cards also bearing the names previously provided to VALENTE by the CI. Additionally, contained in the envelope with the fraudulent documents were the three photos the CI had previously given to VALENTE, however "Amelia + SS" was now written on the back of each photo.

On August 16, 2007, I provided the CI with four photos of Hispanic males. Additionally, a fictitious name and date of birth was written on the back of each photo. The CI then met with VALENTE at her residence and gave her the photos. After departing VALENTE'S residence, the CI stated VALENTE told him/her she was going to bring them to "the guy" in San Diego. Shortly thereafter, VALENTE departed her residence and agents followed her to Gabriel's Market located at the intersection of 38th Street and University Avenue in San Diego. Three minutes later, CHAVEZ parked a dark 2000 Ford F-150 bearing California license plate 6D94654 (hereinafter the "dark F-150"), which is registered to him, near Gabriel's Market. CHAVEZ then approached VALENTE'S vehicle and met with her. Agent Ochoa reported VALENTE and CHAVEZ appeared to be looking down at something near the console area of the VALENTE'S vehicle and he then observed CHAVEZ with something in the palm of his hand. Two minutes later, CHAVEZ returned to the dark F-150 and departed the area. Agents followed CHAVEZ, but lost sight of the dark F-150 near the intersection of Central Avenue and Wightman Street in San Diego. Shortly thereafter, Agent Adam Weber located the dark F-150, which was unoccupied, parked near the intersection of Thorn Street and Central Avenue in San Diego. Approximately one hour after departing Gabriel's Market, Agent Vince Zoni observed CHAVEZ exit a residence located at 4103 Thorn Street, San Diego. (SDG&E service for the 4103 Thorn Street address was in the name of Ivan Estrada and the spouse was listed as Mariana Alquicira. Telephone service for the 4103 Thorn Street address was in the name of Mariana Alquicira.) CHAVEZ returned to the dark F-150, departed the area and agents followed CHAVEZ back to Gabriel's Market. CHAVEZ parked the dark F-150 next to VALENTE'S vehicle and was observed to have something between his teeth consistent with the size of immigration documents and Social Security cards. CHAVEZ then met with VALENTE, who was waiting for him in her vehicle, and then departed the area a minute later. VALENTE also departed the area and agents followed her back to her residence. Shortly after arriving home, the CI stated he/she had spoken with VALENTE who stated the documents were ready. The CI then returned to VALENTE'S residence to pick up the documents, which included four fraudulent Permanent Resident cards which contained the photographs, names and dates of birth previously provided to VALENTE by the CI and four fraudulent Social Security cards also bearing the names previously provided to VALENTE by the CI. Additionally, the CI paid VALENTE $400 dollars for the documents.

Toll records reflect that the telephone number subscribed to by CHAVEZ's wife was in contact with VALENTE's cell phone 11 times on August 16, 2007. Later that afternoon, I drove by 4103 Thorn Street, San Diego and observed a red Jeep Cherokee bearing California license plate 5KPP685, which is registered to Ivan Escobar, parked in the driveway of the residence.

On September 10, 2007, I provided the CI with three photos of Hispanic males and two photos of Hispanic females. Additionally, a fictitious name and date of birth was written on the back of each photo. The CI then met with VALENTE at her residence and gave her the photos. Later that morning, CHAVEZ parked the red F-150 near VALENTE'S residence. Shortly thereafter, CHAVEZ exited VALENTE'S residence and departed the area in the red F-150. Agents followed CHAVEZ, but surveillance of the red F-150 was terminated near the intersection of 47th Street and Market Street in San Diego as he appeared to be conducting counter surveillance. At approximately 1327 hours, CHAVEZ parked the Nissan 300ZX near 4103 Thorn Street, San Diego and then walked towards the rear of the property. At that time, the Jeep Cherokee was parked in the driveway of the residence. At approximately 1535 hours, the CI stated he/she had spoken with VALENTE who said the documents were done and would be at her house within one hour, depending on traffic. At approximately 1551 hours, CHAVEZ departed 4103 Thorn Street, San Diego in the Nissan 300ZX. Agents followed CHAVEZ, who parked the Nissan 300ZX next to the red F-150, which was parked in the 3500 block of 43rd Street in San Diego, and followed him in the red F-150 directly to VALENTE'S residence where he arrived at approximately 1630 hours. At that time, Agent Hakan Catalan observed CHAVEZ run towards the front door VALENTE'S residence and observed a small white envelope in his hand. One minute later, CHAVEZ exited VALENTE'S residence and departed the area. At approximately 1648 hours, the CI returned to VALENTE'S residence to pick up the documents, which included five fraudulent Permanent Resident cards which contained the photographs, names and dates of birth previously provided to VALENTE by the CI and five fraudulent Social Security cards also bearing the names (or variations thereof due to misspellings) previously provided to VALENTE by the CI. Contained in the envelope with the fraudulent documents were the five photos the CI had previously given to VALENTE, however "Amelia" was now written on the back of each photo. Additionally, the CI paid VALENTE $500 dollars for the documents. Toll records reflect that the telephone number subscribed to by CHAVEZ's wife was in contact with VALENTE's cell phone 10 times on September 10, 2007.

On November 23, 2007, I drove by 4103 Thorn Street, San Diego and noticed the residence appeared to be for sale and looked vacant.

On November 27, 2007, CHAVEZ was observed getting into the dark F-150, which was parked in the 3200 block of Myrtle Avenue in San Diego. Agents were unable to maintain surveillance of CHAVEZ, but shortly thereafter Agent Eric Sajo observed him park the dark F-150 near 3331 38th Street, San Diego (hereinafter the "mill"). CHAVEZ approached the "mill." The red Jeep Cherokee registered to Ivan Escobar aka Ivan Estrada that had previously been observed at the 4103

Thorn Street address was now parked in the driveway of the 3331 38th Street residence. (Telephone service for the 3331 38th Street address is in the name of Ivan Estrada's wife, Mariana Alquicira. NOTE: Telephone service at the 4103 Thorn Street address was also in the name of Mariana Alquicira.)

On November 29, 2007, I provided the CI with four photos of Hispanic males and one photo of a Hispanic female. Additionally, a fictitious name and date of birth was written on the back of each photo. The CI then met with VALENTE at her residence and gave her the photos. After the CI departed VALENTE'S residence, he/she met with Agent Zoni who reported VALENTE said the documents should be ready by 1500 hours. At approximately 1111 hours, CHAVEZ parked the red F-150 near VALENTE'S residence and approached her house. Five minutes later, CHAVEZ exited VALENTE'S residence and immediately departed the area in the red F-150. At that time, agents initiated surveillance of CHAVEZ who made seven stops (all of which were five minutes or less) before parking the red F-150 near the "mill" at approximately 1259 hours. CHAVEZ then exited the red F-150 and walked towards the rear of the "mill." At approximately 1340 hours, the Jeep Cherokee parked in the driveway of the "mill" and a male (believed to be Ivan ESTRADA-Cajigal aka Ivan Escobar), a female and a child exited the vehicle and entered into the residence. Shortly thereafter, I provided the CI with a fictitious name and instructed him/her to call VALENTE and order another Social Security card. At approximately 1410 hours, CHAVEZ exited the "mill" via the front door of the residence, returned to the red F-150 and immediately departed the area. Shortly thereafter, agents lost sight of CHAVEZ and the red F-150. Later, I provided the CI with another fictitious name and instructed him/her to call VALENTE and order another Social Security card. Shortly thereafter, the CI stated he/she had spoken with VALENTE who said that she couldn't get a hold of "the guy" earlier, but that he is on the way to her residence now. The CI also stated VALENTE told him/her that once "the guy" is at her house, she will provide him with the additional names for the Social Security cards. At approximately 1447 hours, CHAVEZ parked the red F-150 near VALENTE'S residence, approached her house and departed the area shortly thereafter. At approximately 1551hours, the CI returned to VALENTE'S residence to pick up the documents, which included five fraudulent Permanent Resident cards which contained the photographs, names (or variations thereof due to misspellings) and dates of birth previously provided to VALENTE by the CI and five fraudulent Social Security cards also bearing the names (or variations thereof due to misspellings) previously provided to VALENTE by the CI. Contained in the envelope with the fraudulent documents were the five photos the CI had previously given to VALENTE, however "Amelia" was now written on the back of each photo. Additionally, the CI paid VALENTE $500 dollars for the documents. Toll records reflect that the telephone number subscribed to by CHAVEZ's wife was in contact with VALENTE's cell phone on November 29, 2007, at 1354 hours. (Note: The CI called VALENTE and ordered the first additional Social Security card at about 1351 hours).

On December 3, 2007, the CI stated he/she had spoken with VALENTE regarding the Social Security cards and she told him/her she was out of town, but that the documents were at her house and someone would be there to give them to him/her. Later that morning, the CI went to VALENTE'S residence to pick up the documents. At that time, a female who identified herself as Martha answered the door of VALENTE'S residence, the CI asked her for the documents and she told him/her she did not know what he/she was talking about. The CI stated he/she then called VALENTE who said the documents were by the phone and that they cost $70 dollars. The CI stated VALENTE then called Martha and told her he/she was going to pick up a white envelope. The CI stated Martha then gave him/her the envelope containing the documents and he/she paid her $70 dollars. The two fraudulent Social Security cards, which bore the names (or variations thereof due to misspellings) previously provided to VALENTE by the CI, were contained inside a white envelope, and "Amelia 2 SS" was handwritten on the outside of this envelope. Toll records reflect that the telephone number subscribed to by CHAVEZ'S wife was in contact with VALENTE'S cell phone eight times on December 3, 2007.

On January 29, 2008, the CI called VALENTE at telephone number (760) 822-3657 and made arrangements to purchase documents from her the following day. This conversation between the CI and VALENTE was recorded.

On January 30, 2008, I provided the CI with four photos of Hispanic males and two photos of Hispanic females. Additionally, a fictitious name and date of birth was written on the back of each photo. The CI then met VALENTE at her residence and gave her the photos. After the CI departed VALENTE'S residence, he/she met with Agent Zoni who reported VALENTE said the documents should be ready by 1600 hours. Later that afternoon, the red F-150 parked near VALENTE'S residence. A man later identified as Jaime RAMIREZ (aka Jaime SANCHEZ) exited the red F-150 and approached VALENTE'S residence. Approximately five minutes later, RAMIREZ departed VALENTE'S residence and returned to the red F-150. At that time, agents initiated surveillance of RAMIREZ who eventually parked the red F-150 near a residence located at 3249 Meade Avenue, San Diego, and exited the vehicle. Approximately five minutes later, RAMIREZ returned to the red F-150 and drove to the "mill," did a u-turn and parked the vehicle near the intersection of 38th Street and Thorn Street in San Diego. Approximately twenty minutes later, CHAVEZ exited the "mill" via the front door of the residence and met with RAMIREZ in the red F-150. After meeting briefly with RAMIREZ, CHAVEZ returned to the "mill" and entered the residence via the front door and RAMIREZ departed the area in the red F-150, returned to 3249 Meade Avenue, San Diego, and entered the residence located there. At approximately 1548 hours, CHAVEZ departed the "mill" in a white pickup truck. At approximately 1601 hours, CHAVEZ met with RAMIREZ (who was still driving the red F-150) near the intersection of 41st Street and Myrtle Avenue in San Diego. CHAVEZ then returned to the "mill" and entered the residence via the front door and RAMIREZ drove the red F-150 to an AutoZone located at 3842 University Avenue, San Diego, where he arrived at approximately 1606 hours. (This AutoZone is located next to Gabriel's Market where VALENTE and CHAVEZ were previously observed meeting twice

1  on August 16, 2007.)   At approximately 1615 hours, the CI stated
he/she had spoken with VALENTE who stated she was on her way back (to
2  her residence) with the documents.  This conversation between the CI
and VALENTE was recorded.      At approximately 1737 hours, the CI
3  returned to VALENTE'S residence to pick up the documents, which
included six fraudulent Permanent Resident cards which contained the
4  photographs, names (or variations thereof due to misspellings) and
dates of birth previously provided to VALENTE by the CI and six
5  fraudulent Social Security cards also bearing the names (or variations
thereof due to misspellings) previously provided to VALENTE by the CI.
6  The fraudulent documents were contained inside an envelope and
"Amelia" and "760 _ _ 2-3657" (VALENTE'S cell phone number is (760)
7  822-3657) were handwritten on the outside of this envelope.
Additionally, the CI paid VALENTE $600 dollars for the documents.
8  Toll records reflect that the telephone number subscribed to by
CHAVEZ's wife was in contact with VALENTE's cell phone 16 times on
9  January 30, 2008.

10  Executed on February 12 2008 at 0930 A.m.

11

12                              _K. M_

13                              KERRI CASTILLO, SPECIAL AGENT
                                IMMIGRATION AND CUSTOMS ENFORCEMENT

14       On the basis of the facts presented in this probable cause
statement consisting of seven pages, I find probable cause to believe
15  that the defendants name in this probable cause statement committed
conspiracy to manufacture and possess false entry documents in
16  violation of Title 18, United States Code, Sections 371 and 1546(a).

17  _____        DATE/TIME  FEB 1 2 2008   9 30 Am.
UNITED STATES MAGISTRATE JUDGE
18

19

20

21

22

23

24

25

26

27

28